EDWIN L. AGOSTINI, Landlord, *v.* EDUARDO DE ANTUENO, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, February 20, 1950.

*Ralph Bosch* for tenant appearing specially.

*Anthony R. Leto* for landlord.

CULKIN, J. The tenant herein appears specially and moves to vacate the service of the precept and to dismiss the same on the ground that this court has no jurisdiction of the person of the tenant, pursuant to rule 107 of the Rules of Civil Practice and as provided for in the Constitution of the United States and former section 256 of the Judicial Code of the United States (now U. S. Code, tit. 28, § 1251).

The tenant is a national and natural born citizen of the Republic of Argentina. He is the Third Secretary of the Permanent Delegation of Argentina to the United Nations.

Article V of the Headquarters Agreement between the United Nations and the United States of America, approved by the 80th Congress under Public Law 357 (61 Stat. 756, 762) provides:

## " Article V. — Resident Representatives to the United Nations.

" Section 15 (1) Every person designated by a Member as the principal resident representative to the United Nations of such Member or as a resident representative with the rank of ambassador or minister plenipotentiary,

" (2) such resident members of their staffs as may be agreed upon between the Secretary-General, the Government of the United States and the Government of the Member concerned, * * * shall, whether residing inside or outside the headquarters district, be entitled in the territory of the United States to the same privileges and immunities, subject to corresponding conditions and obligations, as it accords to diplomatic envoys accredited to it ".

The Constitution of the United States, in section 2 of article III, provides: " The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; — to all Cases affecting Ambassadors, other Public Ministers and Consuls;".

The Judicial Code of the United States, in section 256, provided:

## " Exclusive Jurisdiction of the United States Courts.

" The Jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several States: * * *

" Eighth: Of all suits and proceedings against ambassadors, or other public ministers, or their domestics, or domestic servants, or against consuls or vice consuls." (Now, in part, U. S. Code, tit. 28 [Judiciary and Judicial Procedure], §. 1251):

" § 1251. *Original jurisdiction.*

" (a) The Supreme Court shall have original and exclusive jurisdiction of:

" (1) All controversies between two or more States;

" (2) All actions or proceedings against ambassadors or other public ministers of foreign states or their domestics or domestic servants, not inconsistent with the law of nations.

"(b) The Supreme Court shall have original but not exclusive jurisdiction of:

"(1) All actions or proceedings brought by ambassadors or other public ministers of foreign states or to which consuls or vice consuls of foreign states are parties;

"(2) All controversies between the United States and a State;

"(3) All actions or proceedings by a State against the citizens of another State or against aliens." [June 25, 1948, ch. 646, § 1, 62 Stat. 927, eff. Sept. 1, 1948.]

By the provisions of the second paragraph of the sixth article of the Constitution of the United States, laws made in pursuance thereof and treaties made under the authority of the United States are both declared to be the supreme law of the land. In a juridical sense, Federal treaties and Federal statutes stand on the basis of absolute equality as between each other.

The diplomatic privileges accorded to public ministers of foreign states, their staff and their servants, stems from ancient heritage. The ambassador does, by fiction of law and in the abstract, represent the person of his master. The diplomatic immunity extends not only to the person of any public minister but also to his accredited and recognized retinue and also protects his and their goods and chattels from being distrained, seized or attached by any writ or process of any court of the United States or of any State. (See U. S. Rev. Stat., § 4063.) These privileges are, of necessity, accorded to protect the person and personalty of the diplomat and his suite.

The constitutional structure of the United States makes it clear that there are limitations to the treaty-making powers of the Federal Government. Where the act of a State Legislature is constitutional under its reserved powers the Federal Government is bound to respect it in the negotiation and conclusion of its treaties and in the enactment of its laws. (*Siemssen* v. *Bofer,* 6 Cal. 250.)

In the case of *Hammer* v. *Dagenhart* (247 U. S. 251), the Supreme Court of the United States held in effect that all questions relative to custody and control of minor children were reserved exclusively to the States.

A Kansas law regulating the sale of patent rights was held by the court not to violate the right of Congress to issue patents. (*Allen* v. *Riley,* 203 U. S. 347.)

In *Ohio ex rel. Popovici* v. *Alger* (280 U. S. 379 [1930]) the Supreme Court held, in an action brought against the Vice-Consul of Roumania for divorce, that the statute (sections 24

and 233 of the Judicial Code of the United States) granting foreign consuls immunity from suits and proceedings in State courts did not apply. The court said (pp. 383–384, HOLMES, J.): " The language [of the statute] so far as it affects the present case is pretty sweeping but like all language it has to be interpreted in the light of the tacit assumptions upon which it is reasonable to suppose that the language was used. It has been understood that, ' the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States ' * * * and the jurisdiction of the Courts of the United States over divorces and alimony always has been denied. * * * The statutes do not purport to exclude the State Courts from jurisdiction except where they grant it to Courts of the United States. Therefore they do not affect the present case if it be true as has been unquestioned for three-quarters of a century that the Courts of the United States have no jurisdiction over divorce. If, when the Constitution was adopted, the common understanding was that the domestic relations of husband and wife and parent and child were matters reserved to the States, there is no difficulty in construing the instrument accordingly and not much in dealing with the statutes. ' Suits against consuls and vice-consuls ' *must* be taken to refer to ordinary civil proceedings ".

Summary proceedings for the recovery of possession of realty by a landlord against a tenant are historically a matter of local concern in the same manner as proceedings for divorce. In *Woods* v. *O'Brien* (78 F. Supp. 221, 222 [D. C., Mass., 1948]) the court, in considering an action brought by a landlord to evict a tenant as a contempt in violation of a Federal court order, said: " This is not a proceeding to evict the petitioner. In fact this court has no jurisdiction with respect to such a proceeding. That is a matter for the state courts ".

There appears to be no doubt that real property held by diplomatic officers in a foreign State, and not pertaining to his diplomatic status, is subject to local laws.

The instant matter is a special proceeding to recover the possession of real property, and the Legislature of the State of New York has seen fit to invest this court with the unique power, authority and jurisdiction in this type of special proceeding. (Civ. Prac. Act, §§ 1413, 1420.) The jurisdiction of this court is basically in rem and not in personam.

The motion is therefore denied, and the tenant is to have five days within which to file an answer after service of a copy of the order.