OPINION OF THE COURT
J. Emmett Murphy, J.
This is a summary proceeding to recover possession of real property based on holdover. The building is subject to the Emergency Tenant Protection Act of 1974 ([ETPA] L 1974, ch 576, § 4).
The relevant background facts are as follows: In the summer of 1979, tenant received a timely notice to renew her then-expiring lease. She thereafter left on vacation without notifying the landlord of her election to remain a tenant or quit the premises.
While on vacation in Barbados, she sent a letter to the landlord by ordinary mail forwarding her monthly rent check and stating in general terms that she wished to *578 remain a tenant but not electing a term of years or rent amount. After she returned sometime in August of 1979, she attempted to comply with the statute by mailing, by certified mail, the notice sent to her by the landlord and electing a three-year term at an increased rent. Her time to make this election having expired, the landlord refused to accept the late notice and brought a proceeding to evict her at the end of the term.
In that proceeding, respondent was represented by counsel and the landlord was represented by the same law firm which represents him in this proceeding. The respondent testified that her lawyer advised her, in the prior proceeding, that she had “complied with the spirit but not the letter of the law,” and that the landlord was willing to give her an additional three years with no right of renewal. He advised her to accept.
Based upon the legal advice that she had not met the legal requirements for exercising her right to renew the lease, the tenant stipulated in open court, on the record before a City Court Judge, that the holdover proceeding was settled; that the landlord would offer and the tenant would sign a three-year lease to expire on October 31, 1982, at a stipulated rent; that “the tenant shall have no right of renewal at the expiration of the lease and the landlord shall have the right to remove the tenant (by) dispossess proceedings at the end of the lease term,” and that the landlord would make certain repairs which were listed in a separate writing. This stipulation was made before the Bench, with the court interjecting remarks on several occasions for the purpose of clarifying the agreement which the parties appeared to have reached. The case was marked “Settled, stipulation on the record.”
On January 8, 1980, the parties entered a new lease which provided, inter alia, that “this lease was tendered in accordance with the terms and conditions set forth in a stipulation before the Yonkers City Court * * * which stipulation was agreed to by the parties in the presence of the court with all parties being represented by Attorneys.”
Shortly before the expiration of the term of the new lease, a nonpayment proceeding was initiated by petitioner, and thereafter the instant petition was brought in *579 holdover. Respondent moved to dismiss the nonpayment proceeding on various grounds. The court permitted petitioner.to withdraw the nonpayment proceeding, with legal fees to abide the ultimate outcome. A trial was held before the court on the new holdover petition and decision was reserved.
Respondent raises the following defenses to the petition: first, the stipulation was replaced by a new lease which is subject to the Emergency Tenant Protection Act; second, insofar as the stipulation purports to constitute a waiver of tenant’s rights under the ETPA, it is void by statute and by regulation as against public policy; third, the stipulation was based on a mistake, to wit, the tenant had failed to meet the legal requirements for renewing her previous lease; fourth, there was no consideration for the stipulation since the tenant had a valid legal defense to the original holdover petition; fifth, the stipulation was conditioned upon the landlord’s making certain repairs, some of which were not completed; sixth, near expiration of the term of the lease the tenant was entitled to a 30-day notice of termination from the landlord, and received instead only a 30-day notice from the landlord’s attorney; seventh, the notice to quit and petition were not properly filed with the State Division of Housing; and eighth, since the prior stipulation was not “so ordered” and since a final judgment and warrant of eviction with a three-year stay were not issued, the stipulation and waiver of the right of renewal were not the subject of an order and were therefore not a permissible form of waiver.
It appears clear to the court that the 1979 holdover proceeding, viewed in the light most favorable to respondent, presented a litigable issue. The respondent relies upon a timely letter sent by regular mail stating generally that she wished to remain a tenant, without specifying a term or rent. The latter are essential elements of an agreement and of the required acceptance. In Rhee v Dahan (116 Misc 2d 548, 549), the court considered a tenant’s letter to the landlord insufficient to constitute a lease renewal where it stated no rent or commencement date, but only the understanding that “ ‘you are prepared to extend our current lease for an additional three years, an *580 offer which I am prepared to accept’.” The court noted (p 549) that “[a]n agreement to agree in the future on a material term of a contract renders that contract unenforceable”.
Similarly, in Gottlieb v Hawkins (85 Misc 2d 410, 412), this court stated that while it “will not allow the ultimate triumph of form over substance and mandate that the forms of the rent board must be used” the notice and acceptance must be substantially complete to be effective. Such was not done here until well after the expiration of the statutory time period in which the tenant had a right to exercise her option to renew.
The tenant admitted receiving the renewal notice prior to leaving on vacation and in time to consider it, and offered no real excuse for her failure to sign and return it prior to her departure. It is argued that a timely but incomplete attempt at election, followed by a complete election sent approximately two weeks late, constituted substantial compliance with the statute and did not operate to harm the petitioner. The Emergency Tenant Protection Act must be construed to effect its stated purpose as emergency legislation, but within its stated terms. It must also be construed as a statutory restraint on a property owner’s common-law right to lease his property to whom he will at its fair market rental value. The Legislature gave to tenants a 30-day period within which to exercise an option to renew the lease. This is ample time to a person who is mindful of his ordinary obligations.
As to whether the court should excuse such default by the tenant, a distinction should be drawn between cases concerning renewal clauses contained in leases (which clauses may be ambiguous and may be triggered without further notice, toward the end of long-term leases — cf., e.g., Rasch, 1 NY Landlord & Tenant, Summary Proceedings [2d ed], § 330, and cases cited thereunder), and those concerning lease renewals under the Emergency Tenant Protection Act, which specifies in a detailed form what landlords in each county must provide by way of a timely reminder notice of the tenant’s right to renew a lease. The act further provides that the tenant must be instructed in the same notice that his right expires in 30 days, and must *581 be given an opportunity to make his election simply, and by little more than a signature. Under these circumstances, the court will not lightly excuse neglect.
Given that tenant presented, at best, a litigable issue in the 1979 holdover proceeding, the stipulation which settled that case was a valid one. It was not based upon a “mistake” of law or fact. Respondent’s prior counsel correctly informed her that while she may have complied with the spirit of the law, she did not comply with the law; she did not have an excuse for, much less an unassailable defense to, the admitted untimeliness (for application of the “strict compliance” test to statutory time limits, see, e.g., Rosen v Wade, 99 Misc 2d 1114), and that the settlement was a reasonable one in view of her prospect of success at trial.
Tenant next asserts section 11 of the ETPA and section 2500.12 of the Emergency Tenant Protection Regulations (9 NYCRR) as voiding any purported waiver of her rights under the ETPA. Those sections provide as follows:
“§ 11. Non-waiver of rights. Any provision of a lease or other rental agreement which purports to waive a tenant’s rights under this act or regulations promulgated pursuant thereto shall be void as contrary to public policy.”
“2500.12 Waiver of benefit void. An agreement by the tenant to waive the benefit of any provision of the act or this Chapter is void.”
Tenant asserts that these sections void those portions of the stipulation made in open court and of the lease which purport to waive her right of renewal. The court does not agree.
A number of cases have dealt with similar provisions of the city and State rent regulations and have upheld stipulations made in open court with counsel which settled bona fide disputes.
In Hill v Wek Capital Corp. (4 AD2d 615), a tenant agreed, upon the advice of counsel, that his premises were not rent controlled, when in fact the reviewing court found them to be rent controlled. Based upon this error, the tenant stipulated, in open court, to the issuance of a final order with a six-month stay of execution. The court found (p 618) that there was a “bona fide dispute” over a “litiga *582 ble issue”, and that, under these circumstances, a stipulation settling and compromising the controversy made in open court with counsel, does not constitute the kind of waiver prohibited by section 2100.16 of the State Rent and Eviction Regulations (9 NYCRR), a section identical to section 2500.12 of the Emergency Tenant Protection Regulations.
A similar result obtained in Rega v Joy (NYLJ, Aug. 25, 1982, p 11, col 1 [Supreme Ct, Kings County]). That case upheld a stipulation, despite the identical provision of section 17 of the New York City Rent and Eviction Regulations, where tenant, in open court and with counsel, settled a litigable issue as to whether the premises were rent controlled by consenting to the issuance of a warrant of eviction, stayed for one year.
In Matter of Wiener v Caputa (9 AD2d 905, 906), the court upheld a stipulation, made with counsel, in which the tenant released the landlord from certain litigable claims after “they arrived at a settlement the same day and at the Local Administrator’s Office apparently with the approval of the said Local Administrator’s representative” and both then signed a new three-year lease. The court upheld the release of the prior complaints, stating that it was not a prohibited waiver.
The reasoning used in the cited cases applies to the case at bar, and to section 2500.12 of the Emergency Tenant Protection Regulations. A stipulation waiving tenant’s right of further lease renewal, when made in open court with counsel and with the court’s approval, in settlement of a bona fide dispute, is valid despite the nonwaiver provisions of section 2500.12 of the Emergency Tenant Protection Regulations.
Tenant further argues that the new lease superseded the stipulation; that the signing of the new lease affirmed the landlord-tenant relationship; that the waiver contained in the lease is void; that the new lease is still subject to those provisions of the Emergency Tenant Protection Act and Regulations which deal with renewal and eviction; and that this eviction proceeding should actually be brought under section 2504.2 (f) of the Emergency Tenant Protection Regulations (failure to execute a renewal lease) and *583 section 2504.3, on notice to the State Division of Housing and Community Renewal. The court disagrees with respondent’s conclusions.
That a distinction may be drawn between, the signing of a new lease with no right of renewal and the issuance of a warrant of eviction with a substantial stay does not mandate different results. While a new lease continues the landlord-tenant relationship and the issuance of a warrant of eviction formally terminates it, though stayed (cf., e.g., New York City Housing Auth. v Torres, 61 AD2d 681), it does not follow that the signing of such new lease must operate to revive a right of lease renewal, which has been permissibly and expressly waived.
In Hill v Wek Capital Corp. (supra), the stay was to continue for six months. In Rega v Joy (supra), the stay continued for one year. Here the agreement was, in effect, to grant a stay for three years. Under such circumstances, the parties could well agree that the terms of respondent’s occupancy should be spelled out in a new lease, especially where, as here, the parties agreed specifically to a rent “increase under the ETPA guidelines from $346.00 per month, which is the present rent, to $394.44.” The tenant received certain repairs and a three-year stay, and the landlord received an increase.
Although section 11 of the ETPA refers to “[a]ny provision of a lease or other rental agreement” the lease in this case was merely an extension of the stipulation. The stipulation states that the “lease shall be presented to the tenant” and the lease states that it is “tendered in accordance with the terms and conditions set forth in a stipulation”, identifies the prior holdover proceeding and states that the stipulation controls if it conflicts with the lease. No challenge is made that the new rental amount is excessive (cf. Estro Chem. Co. v Falk, 303 NY 83). The only waiver at issue here is the right of lease renewal which was waived in two documents which clearly expressed such waiver and referred to each other.
The rationale advanced in the cited cases, which supports a waiver contained in a stipulation which settles *584 bona fide litigation, applies with equal force to the same waiver contained in a lease given under the same stipulation.
If a stipulated waiver is valid, and is not one prohibited by the regulation, then the restatement of such waiver in a lease tendered pursuant to the stipulation should not be voided by the statute which is parent to the regulation.
As to the claim that the instant proceeding should be brought under the ETPA as one for eviction for failure to renew, with notice to the State Housing Division (Emergency Tenant Protection Regulations, § 2504.2 [f]; § 2504.3) it must be noted that the original holdover proceeding was properly brought under those sections, with appropriate notice to the State Division.
In Rega v Joy (supra), the court apparently agreed with petitioner’s contention that “the Rent Office has no jurisdiction in this matter since a holdover proceeding was brought in the Housing Court and the matter was settled by written stipulation.” The court refused to permit the rent office to upset the prior stipulation.
Further, the instant proceeding is not based upon failure to renew. It is based upon the prior stipulation as embodied in the lease, which stipulation expressly provides that “The tenant shall have no right of renewal at the expiration of the lease and the landlord shall have the right to remove the tenant by dispossess proceedings at the end of the lease term.”
Under these circumstances the instant proceeding is not one maintained under section 2504.2 (f) and thus does not require notice to the State Division. The ground for the proceeding is expiration of the term of the stipulated lease, and not, as provided in section 2504.2 (f) that the “tenant has refused following notice pursuant to section 2503.5 of this Chapter to execute a renewal lease”. Since the right to renew was properly waived, no notice of such purported right can be required. Thus, the provisions of section 2504.2 (f) and section 2504.3 of the regulations do not apply to this proceeding. Similarly, no further order of the division is required under section 2504.4 of the regulations.
*585 As to the form of the required notices to quit the premises, they are sufficient in that they are signed by the same attorney who represented petitioner in court during the prior proceeding, and refer to the prior proceeding and stipulation under which tenant remained in possession. Each notice thus contains adequate reference to the authority of the attorney to act for the landlord who appeared in court with him in both proceedings. (Cf., e.g., Adina 74 Realty Corp. v Hudson, 104 Misc 2d 634.)
Respondent further contends that the prior proceeding did not result in an “Order,” merely a “marking” that the case was “Settled, stipulation on the record” and that the agreement should therefore be treated as a void contract to waive statutory benefits. While the court did not formally state “So Ordered” at the end of the stipulation, such is not the test to determine the validity of such waivers. As stated in Hill v Wek Capital Corp. (supra) and Matter of Wiener v Caputa (supra), the test is whether a litigable claim was settled in open court or the local administrator’s office, with its approval or apparent approval. Such is the case here. The contractual waiver cases are thus inapposite.
Finally, respondent contends that she should be relieved of the stipulation because a small portion of one ceiling was left unpainted and wall-to-wall carpeting was left unanchored along one wall, thus rendering petitioner’s performance of his obligations under the stipulation incomplete. Such complaints are insubstantial and untimely. Had respondent raised them as a timely motion to restore the original proceeding, they could well have been heard and disposed of there. (Cf., e.g., Geletey v Sea Gull Food Market, 108 Misc 2d 670; Teitelbaum Holdings v Gold, 48 NY2d 51.) Since no such motion was made, and since the stipulation expressly provides for “Dispossess proceedings at the end of the lease term,” the stipulation should be treated as one which, on the issue of holdover, “unequivocally terminated their lawsuit” (Teitelbaum Holdings v Gold, supra, p 56). Respondent may not wait until petitioner’s efforts are apparently complete and then continue to wait over two *586 years to assert such complaints as a defense to the new dispossess proceeding. (Cf., e.g., Murray v Capozzi, 71 AD2d 786.)
In closing, the court notes that both sides of this case have been well presented, and contain competing considerations which may well be assigned varying weights. A simple application of the Estro decision to the new lease would reverse the holding herein.
The gravamen of this decision, however, rests primarily upon the undisputed fact that respondent clearly understood her choices in the original holdover proceeding. Her testimony clearly indicates that she fully understood that she was conceding possession of the apartment to petitioner after a three-year stay. Because the negotiations were detailed and the stay lengthy, the agreement took the form of a lease, and provided for a dispossess proceeding to enforce the agreement should respondent attempt to renege. Neither was respondent lulled, nor did she labor under a mistake. She settled a bona fide holdover proceeding by stipulating to a three-year stay later formalized as a lease.
Under these circumstances, the agreement is more fairly viewed as a stipulation of which respondent ought not to be relieved, than as a void waiver of the right to renew.
Respondent’s motion to dismiss the interim nonpayment proceeding contained a request for legal fees. In light of the foregoing, that petition is finally disposed of in favor of respondent. Respondent is awarded $75 attorney’s fees and $20 costs. Petitioner is awarded $150 attorney’s fees and $28 costs in the instant proceeding, and use and occupancy at $394 per month for four months.
Final judgment of possession for petitioner; submit judgment and warrant on three days’ notice. Application for further stay, beyond the original three years, may be made on the submission date.